# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LUTHER LEE ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | **MEMORANDUM OPINION** |
| | ) | **AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | 1:07CV691 |
| | ) | 1:06CR119-1 |
| Respondent. | ) | |

Petitioner Luther Lee Robinson, a federal prisoner, previously filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no. 40).[1] It was later recommended that the motion be denied (docket no. 55). Following objections by Petitioner (docket no. 73), the recommendation was adopted; and an order and judgment were entered denying the motion (docket nos. 75, 76). Petitioner filed an appeal. On appeal, the government agreed that the case should be remanded for an evidentiary hearing on the single issue of whether Petitioner's former counsel's failure to file a notice of appeal amounted to ineffective assistance of counsel. Therefore, the case was remanded for a hearing on that point (docket nos. 89, 90). The hearing was held before the undersigned on September 27, 2011; and the remaining issue in Petitioner's 2255 motion is again before the court for a decision.

## TESTIMONY

---

[1] This and all further cites to the record are to the criminal case.

Two witnesses, Petitioner and his former attorney, were called at the evidentiary hearing. Petitioner's former attorney, Noell Tin, testified first. Tin stated that he has been practicing law for seventeen years. He first began representing Petitioner at a time when he faced only state court drug charges; however, Petitioner was then indicted federally; and Tin continued to represent him. A significant hurdle for Petitioner in the federal case was that the government filed an information of prior conviction seeking enhanced penalties under 21 U.S.C. §§ 841 and 851 (docket no. 16). Because Petitioner had two prior felony drug convictions, he faced a mandatory sentence of life in prison if convicted. In a letter dated April 27, 2006, Tin summarized the case against Petitioner, explained the fact that he faced mandatory life, and advised him to accept a plea offer then being put forward by the government (evid. hearing, govt. ex. 1). Under that plea offer, the government would seek an enhanced penalty based on only one of Petitioner's prior convictions. This meant that Petitioner would still face a mandatory minimum sentence of twenty years of imprisonment, but that he would no longer face a mandatory life sentence. Tin also advised Petitioner that he could possibly receive a lower sentence through cooperation with the government (*id.*).

Petitioner decided to follow Tin's advice, accept the plea offer, and attempt to reduce his sentence through cooperation. Unfortunately, by the time of his sentencing, Petitioner's cooperation had not reached a level that the government deemed substantial enough to warrant any sentence reduction. This meant that

Petitioner still faced the twenty-year mandatory minimum.  Furthermore, the Presentence Report (PSR) had been prepared and had concluded that Petitioner was a career offender based on his prior convictions.  This meant that his sentence under the United States Sentencing Guidelines was 262 to 322 months of imprisonment.  No objections to the career offender status were made by Petitioner.  Petitioner received a sentence of 262-months at sentencing (docket no. 34).

Tin testified that he spoke to Petitioner about the possibility of an appeal both before and after sentencing.  He stated that he advised Petitioner prior to sentencing that he had a right to appeal, but that, absent some unexpected event at sentencing, he did not see any issues for appeal.  Following sentencing, Tin remembered speaking with Petitioner in the "lock-up" near the courtroom.  He did not remember exactly what was said, but he does remember discussing the possibility of an appeal.  He also testified that he has no doubt whatsoever that Petitioner did not ask him to appeal at the end of that conversation.  He believed that Petitioner did understand that he could appeal, but he was sure that he never told him to do so.  Tin stated that the first time he heard of Petitioner wanting to file an appeal was in his 2255 motion.  Finally, he added that, had Petitioner asked him to file an appeal, he would have done so even though there were no valid issues for an appeal.  He stated that he currently has just such an appeal pending simply because a client asked him to and added that it is his ethical duty as an attorney to file an appeal if a client requests one.

On cross examination, Tin testified that he and Petitioner talked about statutory enhancements, Guidelines penalties, and the possibility of an appeal. Petitioner never requested an appeal, however, or sought to make an objection to the career offender designation. Tin also noted that Petitioner's demeanor is usually quiet and that he did not appear upset after sentencing because events had unfolded exactly as expected. Tin did acknowledge that Petitioner's family apparently had trouble contacting him by telephone at some time after sentencing; however, he has never refused to take a call from a client or a client's family.

Finally, on redirect examination, Tin reviewed his file in Petitioner's case. He then produced three letters, marked and admitted as government's exhibits two through four, which Petitioner wrote to him after sentencing. Petitioner's sentencing occurred on August 24, 2006. The letters, which are post marked December 19, 2006 (govt. exhibit 2), April 25, 2007 (govt. exhibit 4), and March 4, 2008 (govt. exhibit 3), discuss Petitioner's ongoing attempts at receiving a sentence reduction via continued cooperation with the government, problems communicating with Tin, and/or getting Petitioner's truck back from the government. In the last letter, Petitioner referenced his 2255 motion and the fact that Tin had told him he could no longer represent him after the ineffective assistance of counsel claims were raised. He told Tin that he filed the motion because he "really truely [sic] [thought Tin] could have done a little better for [him]." (Govt. Ex. 3.) He added that he had spoken to other people who said Tin was a good lawyer, but stated that he was "still upset that

didn't nothing [sic] happen for [him] when [they] went to court." (*Id.*) He also sought Tin's continued advice on another issue. Petitioner did not mention a failure to file a requested appeal in any of the letters, even the letter in which he discussed the 2255 motion.

Petitioner also testified at the evidentiary hearing. In large part, he agreed with Tin's testimony concerning the way the case proceeded and their generally good relationship. He stated that he and Tin did discuss the statutory enhancements, that he authorized Tin to negotiate a plea agreement to avoid the possibility of a mandatory life sentence, and that he accepted the plea bargain and pled guilty. When the United States Probation Officer conducted the interview for the PSR, however, there was mention of the career offender provision. Petitioner testified that he questioned Tin about this and that Tin told him it would not be sought because the government had agreed to reduce the statutory penalties. He also said they would fight it if it did apply. Later, when the PSR applied the career offender enhancement, Tin reportedly told Petitioner that he would speak to the prosecutor and see what would happen at sentencing.

Petitioner testified that he does not remember discussing the possibility of an appeal with Tin prior to sentencing, but cannot deny that it happened. He does remember the sentencing judge advising him that he had ten days to appeal. Petitioner also agreed that he and Tin spoke in the lockup following sentencing; however, his rendition of events is very different from Tin's. Petitioner stated that he

was angry because he felt Tin had lied to him, that they had a heated discussion, and that he told Tin to file an appeal. Tin responded that there were no valid issues for an appeal, but Petitioner claims that he insisted that Tin file it anyway. Petitioner testified that Tin told him again that there were no issues for appeal, stated that he could see that Petitioner was upset, said he was going to let Petitioner calm down while he talked to Petitioner's family, and promised to send Petitioner a letter. Petitioner testified that Tin never sent him a letter. As for his later letters to Tin, Petitioner explained that he did not mention the appeal because he knew from the sentencing judge's admonition that any appeal needed to be filed within ten days and that the time for filing any appeal had passed without him and Tin communicating.

On cross-examination, Petitioner stated that he did plead guilty to avoid a life sentence, that he knew at the time he entered his plea that he faced a statutory minimum of 240-months imprisonment, and that his eventual sentence with the career offender enhancement was 262 months, or only 22 months more than the minimum sentence. Nevertheless, Petitioner was still upset because he was enhanced as a career offender and because he did not receive a downward departure for substantial assistance. He acknowledged , however, that by the time of sentencing, he knew that it was the government's opinion that he had not yet provided substantial assistance. He also agreed that he and Tin got along

personally and that he really only disagreed with Tin now over whether or not he had told Tin to file an appeal.

Finally, on redirect, Petitioner stated that he was upset over the career offender designation. He reported that he testified for the government in a case in South Carolina in 2009 or 2010 in a continued effort at a substantial assistance reduction.

## **ANALYSIS**

As framed by Petitioner's attorney at the evidentiary hearing, there is a single issue of credibility before the court. Petitioner claims that he told Tin to file an appeal when they spoke after sentencing, and Tin maintains that he did not.

It is Petitioner's burden to support his allegation of ineffective assistance of counsel. To prove ineffective assistance of counsel, Petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court has held that the dual performance and prejudice inquiry of *Strickland* also provides the proper framework for analyzing a claim that counsel was ineffective for failing to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000). The *Roe* Court reaffirmed that a defense attorney's performance falls below an objectively reasonable standard if he disregards the defendant's specific instructions to file a notice of appeal which defendant wants at the time and to which the defendant has a right. *Id*. at 477.

Nevertheless, if a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, and if counsel consulted with the defendant about an appeal, counsel performs unreasonably only by failing to follow the defendant's express instructions with respect to an appeal. *See id.* at 478.

Here, the court finds that Tin's testimony, rather than Petitioner's, is the more credible testimony concerning whether or not Petitioner ever instructed him to file an appeal. There are several reasons for this conclusion. One is that Petitioner claims that he wanted Tin to appeal the career offender designation, but he has not provided any reasonable explanation for doing so. Not only has he not given any grounds that Tin could have used to challenge the designation, but the designation did not account for the bulk of his sentence. Petitioner faced a statutory minimum of 240 months whether or not he was a career offender under the Guidelines. As would be expected, Petitioner's efforts were clearly focused on receiving a substantial assistance reduction. He has not explained why he would have instead focused on the career offender enhancement which accounted for only a minor part of his sentence and for which he had no apparent defense.

Another reason for crediting Tin's testimony of Petitioner's is that Petitioner claims that he was angry at Tin following sentencing and that Tin had lied to him about the career offender enhancement. His anger could not have been lessened if, as he claims, Tin then refused to file an appeal despite Petitioner's instructions to do so. Nevertheless, Petitioner continued to write Tin letters for more than a year

and a half. The three letters do not show any anger or animosity and do not mention Petitioner's appeal at all. This is not consistent with Petitioner's version of events.

Finally, there is a lack of any reason for Tin not to have filed an appeal. He stated that he knew it would have been his duty to do so if he were so instructed. Also, he testified that he has filed other appeals where he believed that there were no valid issues for appeal; he even has one pending at this current time.

For all of the reasons just set out, the undersigned concludes that Petitioner has not shown that he instructed Tin to file an appeal or that Tin failed to file an appeal after being told to do so. To the contrary, Tin's testimony establishes that no request for an appeal was made. This means that Petitioner also cannot establish either prong of his claim of ineffective assistance of counsel. The remaining claim in his 2255 motion should be denied.

**IT IS THEREFORE RECOMMENDED** that the remaining claim in Petitioner's motion to vacate, set aside or correct sentence (docket no. 40) be **DENIED** and that Judgment be entered dismissing this action.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, N.C.
October 3, 2011